In re NATIONAL STRUCTURES, INC., Debtor.

Michael F. DUBIS, Trustee, Plaintiff,

v.

NATIONAL STEEL PRODUCTS COMPANY, Defendant.

Bankruptcy No. 84–04129.
Adv. No. 86–0253.

United States Bankruptcy Court, E.D. Wisconsin.

June 30, 1987.

---

Michael F. Dubis, Waterford, Wis., trustee.

Jerome R. Kerkman, Milwaukee, Wis., for Nat. Steel Products Co.

Robert L. Swanson, Racine, Wis., for trustee.

## DECISION

D.E. IHLENFELDT, Bankruptcy Judge.

A jury trial in the Racine County Circuit Court between the debtor, National Structures, Inc., as plaintiff and National Steel Products Company ("National Steel") as defendant culminated on August 23, 1984 in the following fashion. On the basis of the jury's findings, the court ordered judgment for the plaintiff debtor and against National Steel in the sum of $99,856.49, judgment on National Steel's counterclaim in favor of National Steel and against the debtor in the sum of $102,394.25, and then ordered that one judgment be set off against the other. The net result was an order for judgment in favor of National Steel and against the debtor in the sum of $2,537.76—the unsatisfied portion of National Steel's judgment. It is that setoff which is the subject of the litigation in this court.

In addition to the foregoing, the state court also (1) granted judgment in favor of National Steel and against third-party defendant, Arthur K. Morrissey, in the sum of $8,784.50, for which he was jointly obligated with the debtor, and (2) dismissed National Steel's third-party complaints against William F. Kolbe ("Kolbe") and DeMark, Kolbe, Brodek and Crawford, S.C., now DeMark, Kolbe & Brodek, S.C. ("DeMark").

The debtor's judgment of $99,856.49 consisted of $25,000 damages, interest in the amount of $1,586.46, and $73,270.03 for attorney's fees, pursuant to § 135.06 of the Wisconsin Fair Dealership Law. DeMark represented the debtor in the state court suit and contends that when the state court awarded attorney's fees to the debtor, an equitable attorney's lien attached to the debtor's judgment by operation of state law. National Steel's judgment of $102,-394.25 consisted of $72,447.10 owing on

promissory notes and interest of $29,-947.15.

Kolbe and DeMark filed an involuntary bankruptcy petition against National Structures, Inc. on October 5, 1984. DeMark's claim against the debtor was for legal services and disbursements in connection with the circuit court action, whereas Kolbe's claim was based upon a debenture. Because of their delay in effecting service, no order for relief was entered until January 24, 1986. The trustee qualified on February 5, 1986, and on April 17, 1986, at the instance of the petitioning creditor law firm, the trustee commenced this adversary proceeding.

The trustee alleges that "the 'off-set' is not proper under Section 553 of the Bankruptcy Code in that the debts are not 'mutual' as that term is defined under case law, e.g. *McCollum v. Hamilton Nat. Bank* (1938), 303 U.S. 245, 58 S.Ct. 568, 82 L.Ed. 819," and he asks this court to "vacate the set-off of the Circuit Court as rendered in [its judgment] and enter judgment against the defendant in the amount of $99,856.49," with interest and costs. National Steel contends that the debts were mutual, and that in any event, the state court judgment constitutes res judicata.

This action by the trustee, like the bankruptcy case itself, was motivated by DeMark's hope to recover attorney's fees from National Steel for the work DeMark did for the debtor, National Steel's adversary in the state court lawsuit. The brief in support of the trustee's action was filed by DeMark, and the perspective from which the discussion and arguments therein are given is that of DeMark. As a matter of fact, the court has yet to receive a single communication of any kind from anybody on behalf of the debtor corporation, DeMark's former client. No schedules or list of creditors have been filed, and there has been no effort made to see that they are filed.

It is DeMark's contention that this court is not barred by res judicata from re-examining the judgment of the state court, that the claims of the debtor and National Steel were not mutual debts, and that § 553 therefore requires the bankruptcy court to vacate the state court judgment and enter judgment against National Steel in the amount of $99,856.49.

## RES JUDICATA

DeMark contends that the question of mutuality was not decided by the state court, and that in any event, the court's ruling is not binding on DeMark because DeMark "was not a party for the purposes of this determination in the State Court action...."

It should be noted that § 553 of the Code does not *create* a right of setoff—subject to some limitations, it preserves that right if the right exists under nonbankruptcy law. "Prepetition setoffs are governed by applicable nonbankruptcy law. Whether there is a valid and enforceable claim or obligation in existence to be used as a setoff depends on the applicable substantive law, usually state." 4 *Collier on Bankruptcy* p. 553–31 (15th ed.).

DeMark says that it had an equitable attorney's lien on the debtor's judgment, that it was entitled to enforce its lien before the two judgments could be set off, and that there is precedent in Wisconsin case law to allow setoff of attorney's fees before setting off against a counterclaim of the opposing party. The following is offered in support:

> The motion of a judgment debtor to apply his judgment upon one against him owned by his judgment creditor, is addressed to the sound discretion of the court and governed by equitable principles. The right of set-off, when the judgments are in the same action, or actions growing out of the same subject matter, is generally deemed superior to the claim of the attorney in either action for services and disbursements therein. *Yorton v. M., L.S. & W.R. Co.* 62 Wis. 367, 21 N.W. 516, 23 N.W. 401. But where the judgments are in actions having no connection with each other, the equitable right of the attorney, who has rendered services and incurred expenses in obtaining one of such judgments, to be paid out of it, is deemed superior to the

right of the judgment debtor to have that judgment paid by applying upon it the judgment owned by him against his judgment creditor. (citing cases) *Rayworth v. Goodrick*, 163 Wis. 404, 408, 158 N.W. 57 (1916).

■ The court agrees that it was appropriate for the circuit court to look to law such as this in deciding whether National Steel's right to setoff was superior to DeMark's attorney lien claim. Considering the above authority, since the judgments were in the same action, it appears that the circuit court made the right decision. In any event, its order to set off the respective judgments constituted a ruling that setoff was proper under nonbankruptcy law, and that ruling is binding on the debtor, and DeMark, and, for that matter, on the trustee as well. If DeMark thought the decision was wrong, it should have appealed. DeMark's argument that it was not a party to the state court action for purposes of the court's determination with respect to setoff is specious and without merit. *In re Bertoli*, 58 B.R. 992, 14 C.B. C.2d 1180 (N.J.1986). Further, since DeMark is not a party here, the argument is also moot.

■ The circuit court's ruling that setoff was proper under nonbankruptcy law is res judicata, and whether it was right or wrong, this court cannot change it. A federal court has no authority to review final judgments of a state court in judicial proceedings. This is true even though the state court judgment may have been erroneous. *In re Sun Valley Foods Co.*, 801 F.2d 186 (6th Cir.1986). A federal court may entertain a collateral attack on a state court judgment when the judgment is claimed to be the product of fraud, collusion, or duress, or when the prior court lacked personal or subject matter jurisdiction, or when the judgment is founded on no real debt or on a legally unenforceable obligation. *In re A–1 24 Hour Towing, Inc.*, 33 B.R. 281, 10 B.C.D. 1382 (Bkrtcy.N. V.1983). There is no allegation that any of these existed. DeMark's reliance on the *McCollum* case as authority that this court can vacate the judgment of the state court is misplaced. The *McCollum* decision was the end result of a direct attack by a bankruptcy trustee on a state court judgment.

## THE MUTUALITY REQUIREMENTS OF § 553

Contrary to DeMark's position, in addition to deciding the right of setoff under nonbankruptcy law, the Racine County Circuit Court, like the court in *McCollum*, had the authority to decide whether or not the setoff met the requirements of § 553. If it had done so, its decision would constitute res judicata. It did not do so because that issue was not before the court. The issue could not have been addressed by the state court because there was no bankruptcy case pending at that time. Accordingly, this court is free to decide and must decide if the setoff meets the requirements of § 553, since the right of setoff in bankruptcy is dependent upon § 553, and not upon state law. 4 *Collier on Bankruptcy* p. 553–32 (15th ed.).

■ The essential requirement for setoff in § 553 is mutuality. The debts must be owed by the same parties and in the same capacity. For example, a partnership claim against the debtor may not be set off against a partner's obligation to the debtor. A bank with a claim against a debtor may not set off against funds of the debtor in a trust account that has been established for a special purpose. A creditor may not set off a post-petition obligation against a pre-petition claim, although pre-petition obligations may be set off, one against the other, as may post-petition obligations. Further, in view of the broad definitions of "claim" and "debt" in §§ 101(4) and 101(11) of the Code, it is not impermissible *per se* to set off contract claims against tort claims. 4 *Collier on Bankruptcy* pp. 553–18 to 36 (15th ed.).

The manner in which a debt arose may cause it to fail the mutuality test of § 553. In the *McCollum* case, the trial court found that the bankrupt had paid $5,235.55 as interest to the defendant bank on a rate in excess of that permitted by the federal statute governing national banks, giving rise to a penalty for double the amount.

The bankrupt, on the other hand, owed the defendant bank $25,493.70 on notes. The trial court granted judgment to the plaintiff trustee in bankruptcy for double the usurious interest, but set off the judgment against the bankrupt's indebtedness to the bank. On appeal, the state supreme court ruled that the setoff was expressly authorized by the Tennessee statutes, and that it was permissible under § 68(a) of the Bankruptcy Act. The Supreme Court granted certiorari and reversed.

The Court held that the validity of the trial court's ruling depended upon the right of setoff in bankruptcy, which at the time was set down in Section 68(a) of the Bankruptcy Act of 1898. Section 68(a) provided: "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed . and paid."

Emphasizing that the judgment for usurious interest granted to the trustee represented a penalty that was imposed as a "disciplinary measure," the court ruled that it could not be recovered by way of a setoff against the bankrupt's obligation on his note to the bank. Referring to the federal usury statute, the Court said,

> To allow respondent to satisfy the judgment for penalty by mere deduction from its claim against the bankrupt's estate is to detract from the punishment definitely prescribed. The sentence specifically required by the law may not be cut down by implication, set-off or construction, for that would narrow the statute and tend to defeat its purpose.

A similar result was reached for similar reasons in *Riggs v. Govt. Emp. Financial Corp.*, 623 F.2d 68 (9th Cir.1980), where the court ruled that the liability of a creditor under the Truth in Lending Act could not be set off against its claim against the debtor.

▮ DeMark made the same argument regarding the mutuality requirement of § 553 as it did with respect to nonbankruptcy law—that it has an equitable attorney's lien on the debtor's judgment, and

that its right to enforce the lien prevents the debtor's judgment and National Steel's judgment from being mutual debts as required by § 553. In so arguing, DeMark has on occasion confused which of the debts are to be compared. For example, the argument is made (brief, p. 13) that because of the attorney's lien, the debtor owed money to DeMark for legal services and owed National Steel money on the counterclaim, and that these obligations of the debtor were not due and owing in the same capacity.

DeMark simply overlooks the basic fact of who was a debtor and who was a creditor in the state court action. While recognizing that it is the debtor that owes DeMark the attorney's fees, its arguments fail to acknowledge that National Steel's obligation for the payment of $73,270.03 in attorney's fees was to National Structures, Inc.—not to DeMark. The debtor-creditor relationship involved in the lawsuit was between National Steel and the debtor. National Steel owed the debtor and the debtor owed National Steel. Both obligations are pre-petition obligations, and they are owed by the same parties and in the same capacity. To that extent, they meet the mutuality requirement of § 553.

In their arguments, the parties have not analyzed the manner in which the two debts arose. As already noted, National Steel's judgment consisted of principal and interest owing on promissory notes whereas the debtor obtained judgment for damages, interest and attorney's fees pursuant to chapter 135 of the Wisconsin Statutes— the Wisconsin Fair Dealership Law. The purpose of this law is to promote fair business relations between the parties to a dealership agreement and to protect dealers against unfair treatment by the grantors of dealerships.

A suit based on the Wisconsin Fair Dealership Law is in fact an action for breach of contract. "Dealership" is defined in the law (Wis.Stats. § 135.02(2)), as "[A] contract or agreement, either expressed or implied, whether oral or written, between two or more persons...." Although the law provides dealers with rights and remedies

beyond common law and contractual remedies for breach of contract (Wis.Stats. § 135.025(2)(c)), it does not recognize a fiduciary relationship between the parties. There is no special relationship between the parties that requires a duty other than good-faith contractual performance. *Murphy v. White Hen Pantry*, 691 F.2d 350 (7th Cir.1982), *White Hen Pantry v. Johnson*, 599 F.Supp. 718 (E.D.Wis.1982).

Because the Wisconsin law is not a penal statute, the circumstances of this case are not comparable to those in *Riggs* and *McCollum*. To the contrary, both of the judgments in this case were derived from what were nothing more than breach of contract causes of action. Since they are owed by the same parties and in the same capacity, they are mutual within the meaning of § 553.

Exceptions to the right of setoff contained in § 553 were also cited and argued. They have no application here. Although the amount of each party's obligation to the other was determined by the state court decision, each of those obligations was in existence long before the 90 day preference period, and it cannot be said that there was an improvement in position by either of the parties during that period.

The court finds that the setoff here in issue is permissible in that it meets the requirements of § 553 and is not subject to any of the exceptions contained in that section.

This decision shall stand as and for findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.