In re COMMUNICALL CENTRAL, INC., Debtor.

F.E. SCHWARTZ, Trustee of the Estate of Communicall Central, Inc., Plaintiff,

v.

C.M.C., INC., Defendant.

Bankruptcy No. 87 B 14262.
Adv. No. 89 A 0573.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Oct. 27, 1989.

Jeffrey S. Firestone, Lawrence Liebman, Strange & Firestone, Chicago, Ill., for C.M.C., Inc., defendant.

Jay Weisman, Mitchell R. Nagorsky, Weisman & Weisman, Chicago, Ill., for F.E. Schwartz, trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by the defendant C.M.C., Inc. ("CMC"). For the reasons set forth herein, the Court having considered all the pleadings, exhibits and memoranda filed, does hereby grant the motion for summary judgment.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334 and General Orders of the United States District Court for the Northern District of Illinois. The motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K) and (O).

## II. STANDARD FOR SUMMARY JUDGMENT

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

[T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Donald v. Polk County*, 836 F.2d 376, 378–379 (7th Cir. 1988).

In 1986, the Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir.1986)). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Matsushita*, 475 U.S. at 585–586, 106 S.Ct. at 1355–56. There is no genuine issue for trial if the record, taken as a whole, does not lead a rational trier of fact to find for the nonmoving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. However, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250, 106 S.Ct. at 2511; *see also Valley Liquors, Inc. v. Reinfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.1987), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its

pleadings, rather its response must show that there is a genuine issue for trial. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Davis v. City of Chicago,* 841 F.2d 186, 189 (7th Cir.1988); *Marine Bank, National Association v. Meat Counter, Inc.,* 826 F.2d 1577, 1579 (7th Cir.1987); *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis–Chalmers Corp.,* 799 F.2d 311, 312 (7th Cir.1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987). Furthermore, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under the applicable law. *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

Rule 12(*l*) of the General Rules of the United States District Court for the Northern District of Illinois adopted by the General Order of the Bankruptcy Court on May 6, 1986, requires that the party moving for summary judgment file a detailed statement of material facts as to which they contend there is no genuine issue. Rule 12(m) in turn requires that the party opposing the motion file a statement of material facts as to which there is a genuine issue. If the Rule 12(m) statement fails to deny the facts set forth in the movant's statement, those facts will be deemed admitted.

The Court hereby allows the motion as there is no genuine issue of material fact in dispute and as a matter of law, CMC is entitled to judgment.

### III.   UNDISPUTED FACTS AND BACKGROUND

Due to the fact that the Trustee failed to file a Rule 12(m) statement contesting the asserted uncontested facts set forth in the Rule 12(*l*) statement, those facts are deemed admitted for purposes of this motion. On September 30, 1987, Communicall Central, Inc. (the "Debtor") filed a voluntary Chapter 7 petition. Prior thereto on February 13, 1987, the Debtor and CMC as Agent for American National Bank and Trust Company of Chicago, T/U/T dated July 17, 1985 and known as Trust No. 64970, executed a lease for the seventh floor of 180 West Washington Street, Chicago, Illinois. The lease was to run for a five year period commencing April 1, 1987 and terminating March 31, 1992. The lease required a security deposit in the amount of $10,000.00 which the Debtor tendered to CMC. It is undisputed that at all times CMC has retained possession of the money.

The lease further provided the Debtor with an option as to the first year's rent. The monthly rental for the period commencing April 1, 1987 through March 31, 1988 would be $4,000.00. This provision, however, was subject to a rider which provided that the "[l]andlord shall provide either 100% free rent for a period of six (6) months commencing April 1, 1987 and running through September 30, 1987, rent shall commence October 1, 1987; or, in lieu of free rent, Landlord will reduce the first year's rent by 50% making the first year's rent $2,000.00 instead of $4,000.00 as it appears in Exhibit C." The Debtor chose the first option and received free rent from the period April 1, 1987 through September 30, 1987, the date the petition was filed.

In addition, the lease stated in regard to the security deposit:

> If Tenant has not defaulted hereunder or if Landlord has not applied said sum to said default, then said security deposit or any portion thereof not so applied by Landlord shall be paid to Tenant within forty-five (45) days after the expiration of this Lease and the vacation of an advance payment of Fixed Rent or measure of damages for any default by Tenant under this Lease, nor shall it be a bar or defense to any action which Landlord may at any time institute against Tenant.

At the time of the filing of the petition, there remained due under the lease the sum of $263,250.00 for rent through March 31, 1992. On October 14, 1987, CMC filed a motion to require the Trustee to assume or

reject the lease. Shortly thereafter, on October 23, 1987, Judge Katz entered an Order granting the Trustee leave to accept or reject the lease on or before November 4, 1987.[1]

On June 22, 1989, the Trustee commenced this adversary proceeding to obtain the return of the security deposit. CMC answered and denied that the Trustee was entitled to the security deposit. CMC asserted two affirmative defenses: 1) it has an allowable prepetition claim for rent pursuant to 11 U.S.C. § 502(g) as limited by 11 U.S.C. § 502(b)(6) of $50,250.00 which it is entitled to setoff; and 2) it has a perfected security interest in the security deposit it received from the Debtor.

On July 17, 1989 CMC filed the instant motion. CMC's bases for the motion are twofold: 1) the rejection of the lease by the Trustee created a prepetition claim for damages under the lease; and 2) CMC has a perfected security interest in the security deposit and the Trustee failed to offer adequate protection of its interest in said deposit. Additionally, CMC seeks to setoff its prepetition claim against the Trustee's claim for the return of the security deposit. The Trustee has failed to respond to the instant motion.

### IV. DISCUSSION

#### A. 11 U.S.C. § 502

■ Section 502(g) provides:

A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12 or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

11 U.S.C. § 502(g).

The legislative history indicates that "[s]ubsection (g) gives entities injured by the rejection of an executory contract or unexpired lease, either under section 365 or under a plan of reorganization, a prepetition claim for any resulting damages, and requires that the injured entity be treated as a prepetition creditor with respect to that claim." H.R.Rep. No. 595, 95th Cong., 1st Sess. 354 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 65 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5851, 6310. Thus, if an unexpired lease is rejected after the commencement of a case, it gives rise to a claim for damages sustained by the landlord, provided that there has not been a previous assumption by the trustee. The allowable amount for claims for damages resulting from rejection of same is limited by the provisions contained in section 502(b)(6).

Because the Trustee has rejected the lease, under section 365, the basis for calculating CMC's claim is to be determined pursuant to section 502(b)(6). Federal law does not provide a formula for ascertainment of a lessor's allowable damages. Rather, it merely qualifies and limits the claim to a maximum. *See City Bank Farmers Trust Co. v. Irving Trust Company*, 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324 (1937); *In re Goldblatt Bros., Inc.*, 66 B.R. 337, 345 (Bankr.N.D.Ill.1986). The purpose of section 502(b)(6) and its predecessors is two-fold. First, it ensures that other creditors recover more than the minimal portion of their claims they would receive if landlord claims resulting from termination of leases were allowed in full. Second, it ensures that lessors obtain a reasonable portion of the damages they suffered as a result of an abandonment of a lease by a debtor. *Goldblatt Bros., Inc.*, 66 B.R. at 346.

Section 502 was created and codified the holding in the controlling case of *Oldden v. Tonto Realty Corp.*, 143 F.2d 916 (2d Cir. 1944). Section 502(b)(6) provides that a claim is to be allowed in full except as follows:

Judge Hertz leaving the bench. Thereafter, the case was reassigned to this Judge on February 9, 1988.

---

**1.** The Honorable Frederick J. Hertz was originally assigned the case when it was filed in 1987. The Honorable Erwin I. Katz was assigned the case on November 2, 1987, upon

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease or real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property plus

(B) any unpaid rent due under such lease without acceleration, on the earlier of such dates....

11 U.S.C. § 502(b)(6).

This section is "designed to compensate the landlord for his loss while not permitting a claim so large ... as to prevent other general unsecured creditors from recovering a dividend from the estate." H.R. Rep. No. 595, 95th Cong., 1st Sess. 353 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 63 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5849, 6309; *see also In re Multech Corp.*, 47 B.R. 747, 751 (Bankr.N.D. Iowa 1985). Moreover, the legislative comments state that the landlord "will not be permitted to offset his actual damages against his security deposit and then claim for the balance under this paragraph. Rather, his security deposit will be applied in satisfaction of the claim that is allowed under this paragraph." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 354 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 63–64 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5849, 5850, 6310.

Colliers states in this regard:

to the extent that a landlord will have a security deposit in excess of the amount of the claim allowed under section 502(b)(6), the excess will be turned over to the trustee to be administered as part of the debtor's estate. To the extent that the security deposit is less that the amount of the allowable claim as provided for by section 502(b)(6), the security deposit will be applied in satisfaction of the claim thus allowed.

3 *Collier on Bankruptcy* ¶ 502.02 at 502–62.1 (15th ed. 1989).

In calculating CMC's allowable claim under section 502(b)(6), the maximum amount is to be calculated as follows: the rent for the first year after the petition was filed is based on the sum of $4,000.00 per month for six months plus $4,375.00 per month for six months, which totals $50,250.00. This total is compared with fifteen percent of the remaining rent due under the lease, through the remaining term ending March 31, 1992, which amounts to $39,487.50 (15% of $263,250.00). Pursuant to section 502(b)(6)(A), the claim is to be allowed in an amount equal to the greater of these two figures. Thus, CMC's allowed claim is $50,250.00. CMC has furnished the bases for its correct calculations and the Trustee has failed to dispute same. Hence, pursuant to section 502(b)(6) CMC is a prepetition creditor of the estate in the allowed amount of $50,250.00 for the damages flowing from the rejection of the lease. *See In re Strause*, 40 B.R. 110, 112 (Bankr. W.D.Wis.1984).

## B. FEDERAL RULE OF BANKRUPTCY PROCEDURE 3002(c)(4)

Federal Rule of Bankruptcy Procedure 3002(c)(4) provides:

(c) In a chapter 7 liquidation or chapter 13 individual's debt adjustment case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code, except as follows:

(4) A claim arising from the rejection of an executory contract of the debtor may be filed within such time as the court may direct.

Fed.R.Bankr.P. 3002(c)(4).

The Court set July 7, 1988 as the last day for filing claims. For purposes of this matter, CMC's pleadings will be treated as its claim arising from the rejection of the lease.

## C. 11 U.S.C. § 553

CMC asserts that it should be allowed to setoff the $10,000.00 security deposit it

held prepetition since February 17, 1987 against the amount of its allowed claim of $50,250.00. A creditor's right of setoff is set forth in section 553 which provides in relevant part:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 553(a).

The right of setoff is within the discretion of the Court, exercised under the principles of equity. *In re Southern Industrial Banking Corp.*, 809 F.2d 329, 332 (6th Cir.1987); *In re Charter Co.*, 86 B.R. 280, 283 (Bankr.M.D.Fla.1988). The Seventh Circuit, in speaking to section 553 opined, "[t]he only sense we can make of the rule is that it recognizes that the creditor who owes his debtor money is like a secured creditor; indeed, the mutual debts, to the extent equal, secure each party against the other's default." *In re Elcona Homes Corp.*, 863 F.2d 483, 485 (7th Cir.1988).

Section 553 requires that the debts be mutual and prepetition. *Boston & Maine Corp. v. Chicago Pacific Corp.*, 785 F.2d 562, 565–566 (7th Cir.1986); *In re Braniff Airways, Inc.*, 42 B.R. 443, 447 (Bankr.N.D.Tex.1984). The term "mutual debt" is not defined by the Bankruptcy Code. The mutuality requirement, however, is strictly construed. 4 *Collier on Bankruptcy* § 553.04 at 553–17 (15th ed. 1989). In order for debts to be mutual they must be in the same right and between the same parties, standing in the same capacity. *Boston & Maine Corp. v. Chicago Pacific Corp.*, 785 F.2d at 566; *In re Eggemeyer*, 75 B.R. 20, 21 (Bankr.S.D.Ill.1987); *In re National Structures, Inc.*, 74 B.R. 986, 989 (Bankr.E.D.Wis.1987); *In re J.A. Clark Mechanical, Inc.*, 80 B.R. 430, 432 (Bankr.N.D.Ohio 1987); *In re O.P.M. Leasing Services, Inc.*, 68 B.R. 979, 986 (Bankr.S.D.N.Y.1987).

■ The mutual debt and the mutual credit between the debtor and the creditor must exist at the time of the filing of the petition. *In re Garcia*, 23 B.R. 266, 268 (N.D.Ill.1982). A postpetition obligation may not be setoff against a prepetition obligation of the debtor because there is no mutuality of obligation. *Westinghouse Electric Corp. v. Fidelity & Deposit Co.*, 63 B.R. 18, 20 (Bankr.E.D.Pa.1986); *In re Hill*, 19 B.R. 375, 380 (Bankr.N.D.Tex.1982). A creditor may not offset its prepetition claims against a debt owed to the debtor which came into existence after the filing of the bankruptcy case. *Cooper–Jarrett, Inc. v. Central Transport, Inc.*, 726 F.2d 93, 96 (3rd Cir.1984). Permitting the offset of prepetition debts owed by the debtor against postpetition debts owed to the debtor would frustrate the fresh start policy that underlies the Bankruptcy Code. *In re Mohawk Industries, Inc.*, 82 B.R. 174, 177 (Bankr.D.Mass.1987).

■ A creditor must obtain relief from the automatic stay or must obtain an order allowing setoff prior to exercising any right of setoff. *In re Garcia*, 23 B.R. at 267; *In re Academy Answering Services, Inc.*, 90 B.R. 294, 295 (Bankr.N.D. Ohio 1988). A right of setoff may be asserted in a proof of claim but cannot be exercised until the automatic stay is lifted. *In re Britton*, 83 B.R. 914, 919 (Bankr.E.D.N.C.1988).

■ CMC's allowed claim as limited by section 506(b)(6)(A) is a prepetition claim for damages. It is also mutual for purposes of section 553. The security deposit was paid on the same lease. Therefore, the Court finds that CMC is entitled to setoff the $10,000.00 security deposit against its claim. The legislative comments to section 502 cited above are crystal clear on this point. When the security deposit is less than the amount of the allowed claim, it is to be applied in satisfaction of the allowed claim. *See also Oldden v. Tonto Realty Corp.*, 143 F.2d 916 (2d Cir.1944); *In re Scionti*, 40 B.R. 947, 948 (Bankr.D.Mass.1984). Thus, the Court allows the request for setoff pursuant to section 553. CMC's claim will be divided into a secured portion

for the amount covered by the security deposit to be setoff and the remaining portion of $40,250.00 is classified as an unsecured claim. *See In re Zienel Furniture, Inc.,* 13 B.R. 264, 266 (Bankr.E.D.Wis. 1981).

## V. CONCLUSION

For the foregoing reasons, the Court hereby grants the motion for summary judgment. CMC's claim is allowed in the amount of $50,250.00. The $10,000.00 security deposit will be applied in satisfaction of the secured portion of the claim. The balance thereof, namely $40,250.00, will be allowed as a prepetition unsecured claim.

This Opinion is to serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.