**In re USINTERNETWORKING, INC., et al., Debtors.**

**Nos. 02–5–0215–SD to 02–5–0219–SD.**

United States Bankruptcy Court,
D. Maryland,
at Baltimore.

March 6, 2003.

Karen H. Moore, Stephen B. Gerald, Whiteford, Taylor & Preston, LLP, Baltimore, MD, for debtor.

John E. Lucian, Blank, Rome, Comisky & McCauley, LLP, Baltimore, MD, Colin R. Robinson, Blank, Rome, Comisky & McCauley, LLP, Philadelphia, PA, for Liberty Property Ltd. Partnership.

*MEMORANDUM OPINION AND OR-*
*DER SUSTAINING DEBTOR'S*
*AMENDED OBJECTION TO AL-*
*LOWANCE OF CLAIM FILED BY*
*LIBERTY PROPERTY LIMITED*
*PARTNERSHIP*

E. STEPHEN DERBY, Bankruptcy
Judge.

The issue for resolution is whether the one year cap on a landlord's prepetition lease termination claim under 11 U.S.C. § 502(b)(6) is the rent during the first year after the petition date or is the average annual rent for the remaining term of the Lease.

This matter is brought on for decision, after a hearing, on the Amended Objection of Debtors, USinternetworking, Inc., *et al.,* to the claim of its landlord, Liberty Property Limited Partnership ("Liberty"), and Liberty's reply. For the reasons that follow, the court will sustain Debtors' objection.

Debtors filed voluntary petitions for reorganization under Chapter 11 on January 7, 2002. They remained in possession of their property and continued management of their businesses. Debtors and Liberty were parties to a prepetition lease agreement wherein Debtors leased from Liberty two suites located in Annapolis, Maryland. On February 21, 2002, the court entered an order authorizing rejection of the unexpired lease. Subsequently, Liberty filed a claim for rejection damages in the amount of $701,892.94. In their Amended Objection, Debtors contend that a proper calculation of Liberty's damage cap under Section 502(b)(6) should yield a figure of $665,683.06.

At the heart of the parties' dispute is the proper interpretation of 11 U.S.C. § 502(b)(6), which provides:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

. . . .

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates . . . .

11 U.S.C. § 502(b)(6).

The parties' divergence of interpretation concerns language in subsection (b)(6)(A), namely, whether "rent reserved" for "one year" is an amount of rent measured over the twelve-month period immediately following the petition date[1] or if it is the average yearly rent over the remaining term of the lease.

Debtors contend that the language of the statute is clear, and they argue that

---

**1.** The parties agree the properties that are the subject of the lease agreement between the parties were not surrendered or repossessed prior to the petition date, and thus the petition date is the "earlier" of the dates referenced in Section 502(b)(6)(A).

"one year" is the twelve-month period immediately following the petition date. Liberty, on the other hand, maintains the language of Section 502(b)(6)(A) is subject to two interpretations: one is that the statute measures the damage cap as a function of time ("time model"), and the other is that the cap is measured in terms of money ("money model"). Liberty contends that the money model is the majority view, and that a lessor should thus use the average yearly rent over the remaining term of the lease as its damage cap.

As Liberty points out, Section 502(b)(6)(A) has been subject to varying interpretations. Most courts agree, however, that Section 502(b)(6)(A) is not a formula for calculating damages; it is simply a method to cap damages calculated under the terms of the lease and state law. *In re Steven Windsor, Inc.*, 201 B.R. 133, 135 (Bankr.D.Md.1996).

The point where interpretations of Section 502(b)(6)(A) have varied is where the damage cap calculation requires a determination of "15 percent . . . of the remaining term" of the lease. Adopting a time model, some courts have interpreted this language to require a measurement of 15 percent of the remaining time left on a lease. *See In re Iron–Oak Supply Corp.*, 169 B.R. 414 (Bankr.E.D.Cal.1994); *In re Allegheny Intern., Inc.*, 145 B.R. 823 (W.D.Pa.1992). A majority of courts, however, have determined that Section 502(b)(6)(A) requires the 15 percent to be measured as a function of the remaining amount of rent due under a lease, *i.e.*, a money model. *See In re Today's Woman of Florida, Inc.*, 195 B.R. 506 (Bankr. M.D.Fla.1996); *In re Gantos*, 176 B.R. 793 (Bankr.W.D.Mich.1995); *In re Financial News Network, Inc.*, 149 B.R. 348 (Bankr. S.D.N.Y.1993); *In re Communicall Cent., Inc.*, 106 B.R. 540 (Bankr.N.D.Ill.1989); *In re McLean Enter., Inc.*, 105 B.R. 928

(Bankr.W.D.Mo.1989). Although none of these money model cases specifically address the issue of how the one-year period is to be determined when calculating the damage cap under Section 502(b)(6)(A), Liberty relies on these cases by analogy. It asks the court to extend the money model interpretation to allow the rent reserved for one year to be measured as the average annual rent over the remaining term of the lease.

Liberty argues first that, because the statute does not specifically indicate the year to be used when calculating the rent reserved for one year, a lessor should be entitled to use the average yearly rent over the remaining term of the lease to ensure it is not deprived of its bargained for benefit. It argues second that allowing the rent reserved for one year to be determined by using the twelve-month period immediately following the earlier of the petition date or date of surrender would be counter-intuitive. The reason offered is that the one-year cap could overlap with the period for which a lessor may present an administrative rent claim, thus allowing the lessor two rent claims for the same period. These two arguments are unpersuasive.

Parsing Section 502(b)(6)(A) yields the following language with regard to the one-year period used in the damage-cap calculation: "the rent reserved by such lease, without acceleration, for . . . one year . . . following the earlier of-(i) the date of the filing of the petition; and (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property." 11 U.S.C. § 502(b)(6)(A). Accepting Liberty's argument that the statute does not state specifically which year is to be used in calculating the damage cap, "one year" could be *any* twelve-month period following one of the triggering events. Conceivably, a lessor could argue that it is

permitted to use any twelve months, not necessarily in succession, to calculate its damage cap under Section 502(b)(6)(A). Such an interpretation, without more, is unacceptable because it would create a myriad of possibilities in how "one year" should construed in damage cap calculation, thus causing greater ambiguity. *See In re Boggs–Rice Co.*, 66 F.2d 855 (4th Cir.1933) (stating that rules of statutory construction are "resorted to for the purpose of resolving ambiguity, not for the purpose of creating it").

■ Liberty attempts to remedy this inherent problem in its interpretation by stating that an average twelve-month period should be used. Although Liberty's suggestion may remedy the problem of allowing *any* twelve-month period to be used, it would essentially require the insertion of new language into the statute, *i.e.*, "the *average* rent reserved … for one year." Courts, however, are obligated to refrain from inserting language into a statute that Congress has opted to omit. *Root v. New Liberty Hosp. Dist.*, 209 F.3d 1068 (8th Cir.2000). Surely, if Congress intended that the damage cap be calculated by taking an average, it could have so stated. It did not.

Furthermore, there is no support for Liberty's interpretation in the cases it cites. Each of the cases cited used the twelve-month period following the earlier of the petition date or date of surrender to calculate the damage cap, or, in the case of *Gantos*, assumed that measurement. *See Today's Woman*, 195 B.R. at 507 (approving the use of "one year's rent beginning on the date the Debtor vacated the premises"); *Financial News*, 149 B.R. at 351 (using the "rent reserved for one year following Debtor's filing"); *Communicall*, 106 B.R. at 544 (using "the rent for the first year after the petition was filed"); *McLean*, 105 B.R. at 936 (using "the rent

due under the lease for the year following the petition"). Although the court in *Gantos* did not provide a breakdown of the damage cap calculation, it opined, contrary to Liberty's contention, that the 15% "damage cap [calculation under Section 502(b)(6)(A) is] based [both] on rent *and* time"; based on rent with respect to determining "15 percent" and based on time when determining rent reserved for "one year." *Gantos*, 176 B.R. at 796. Thus, the authorities cited by Liberty actually support Debtors' position that the rent reserved for one year, as used in the calculation of the damage cap under Section 502(b)(6), is determined by taking the rent reserved under the lease for the twelve-month period immediately following the earlier of the petition date or date of surrender.

Debtor's position finds further support in the predecessor of Section 502(b)(6), Section 63(a)(9) of the Bankruptcy Act, 11 U.S.C. § 103(a)(9) (repealed 1978). Under Section 63(a)(9) of the Bankruptcy Act, a landlord's claim for rejection damages could not exceed "the rent reserved by the lease, without acceleration, for the year next succeeding the date of surrender." (Emphasis added). Absent any evidence from the plain language or legislative history of Section 502(b)(6) that Congress intended to modify how the one-year period is determined in the calculation of the rejection damage cap, this Court is inclined to accept that no such intention to change existed and that the rent reserved for one year is the year next succeeding the earlier of the petition date or date of surrender. *See Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 227, 77 S.Ct. 787, 791, 1 L.Ed.2d 786 (1957) (stating that "no changes in law or policy are to be presumed from changes of language in the revision unless an intent to make such changes is clearly expressed");

*see also In re Woodscape Ltd. Partnership,* 134 B.R. 165 (Bankr.D.Md.1991)(citing *Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection,* 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859 (1986)).

With regard to Liberty's second argument, Section 502(b)(6) is not a formula for calculating actual damages, but rather, it is simply a cap on damages. Because Section 502(b)(6) does not attempt to calculate a lessor's actual damages over the twelve-month period following the earlier of the petition date or date of surrender, it is of no import if an overlapping period is used to determine a lessor's administrative rent claim under Section 365(d)(3). Thus, Liberty's second argument fails.

Based on the foregoing, this Court holds that "one year," as used in 11 U.S.C. § 502(b)(6)(A), describes the twelve-month period immediately following the earlier of the petition date or date of surrender, and the rent reserved for that period under the lease should be used in calculating the damage cap under 11 U.S.C. § 502(b)(6).

Accordingly, it is, this 5th day of March 2003, by the United States Bankruptcy Court for the District of Maryland,

**ORDERED,** that Debtors' Amended Objection to the claim of Liberty Property Limited Partnership is **SUSTAINED;** and it is further

**ORDERED,** that the claim of Liberty Property Limited Partnership is **ALLOWED** in the reduced amount of $665,683.06.