**In re BOB'S SEA RAY BOATS, INC., Debtor.**

**Bankruptcy No. 90–05821.**

United States Bankruptcy Court, D. North Dakota.

May 7, 1992.

Phillip D. Armstrong, Minot, N.D., trustee.

Dale W. Moench, Bismarck, N.D., for debtor, Bob's Sea Ray Boats.

Richard B. Baer, Bismarck, N.D., for creditor, Henry Albers.

Marilyn K. Foss, Bismarck, N.D., for United Bank Bismarck.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter comes before the court on the trustee's objection to the claim of Henry A. Albers (Albers). On February 5, 1992, Albers filed his proof of claim in the sum of $265,722.32 stemming from the Debtor's breach of a commercial real estate lease, the breach of a related consulting agreement and repair damages occasioned by the destruction or removal of certain items of property.

The matter came on for hearing on April 14, 1992.

Albers is the owner of commercial property situated in Bismarck, North Dakota, and where he had for some time operated a retail boat sales and service business. In April 1989, the Debtor, Bob's Sea Ray Boats, Inc. (hereinafter referred to as the Debtor)[1] entered into two separate agreements with Albers. The first of these was a lease by which the Debtor agreed to lease the retail boat facility for a term of three years commencing May 1, 1989, and terminating on May 1, 1992, at a rate of $5,500.00 per month. In addition the Debtor became responsible for all taxes.

The second agreement between the parties was a consulting agreement by which the Debtor, acknowledging the need of Albers' boating expertise, agreed to pay him $2,527.04 for thirty-six months for his advice concerning the business of retail boats and related items. The Debtor paid Albers the consulting fee for the months of June through November 1989 but failed to pay for the month of May 1989 or for December 1989 and thereafter.

The Debtor's boat business faltered and Albers recovered possession of the leasehold in the latter part of November or early December, 1989. By January 1990, he had re-let the premises to Hank Albers Leasing which pays him rent of $4,000.00 per month and which commenced operating under the name Hank's Boat Sales. Hank Albers Leasing also began at that time to pay Albers a salary of $3,000.00 per month.

Upon recovering the premises, Albers discovered that the carpeting, wash stall curtain, sprinkler control box and workbench tops had been damaged and needed replacing at a cost of $1,641.70. He also discovered that the Debtor had removed light pulls and light fixtures from the parking lot which would cost $10,395.00 to replace.

The Debtor paid rent and the consulting fee through November 1989, but paid not real estate taxes during the term of occupancy.

1.

Although in his proof of claim, Albers sought recovery for the Twenty-nine months remaining on the lease, both he and the trustee now agree that section 502(b)(6) of the United States Bankruptcy Code is applicable to the calculation of damages resulting from the lease termination but disagree on the manner of making that calculation and what kind of costs and expenses are covered by the section.

Albers now argues that at a minimum he is entitled to twelve months rent for the period November 1989 through October 1990 ($5,500 × 12 = $66,000.00) plus taxes and specials accrued but unpaid during the Debtor's six month occupancy of $391.84 per month (6 × $391.84 = $2,351.04). Albers also includes in this damage computation taxes coming due for the twelve months subsequent to lease termination—two months in 1989 at $391.84 per month and ten months in 1990 at $416.09 per month ((2 × $391.84 = $783.68) + (10 × $416.09 = $4,160.90) = $4,944.58).

In view of the fact that upon recovering possession Albers re-let the premises to Hank Albers Leasing for $4,000.00 per month, the trustee concedes to no more than $1,500.00 per month in damages, believing Albers had a duty to mitigate any damages arising in consequence of the breach and did so. The trustee also argues that Albers is entitled to taxes only for

---

1. The Debtor operated under two names: Herringer Hardware until April 30, 1989 and thereafter under the name Bob's Sea Ray Boats, Inc.. There has been no suggestion that they are not one and the same entity.

those months the Debtor was in actual possession of the premises. As for the damages occasioned by removal of property, the trustee charges that the items removed were trade fixtures subject to removal by a tenant.

Section 502(b)(6) of the Bankruptcy Code provides that a claim for damages resulting from the termination of a lease of real property is limited to:

(A) The rent reserved by such lease, without acceleration, for the greater of one year, or 15%, not to exceed 3 years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) Any unpaid rent due under such lease without acceleration, or the earlier of such dates.

Section 502(b)(6) was designed to compensate a landlord for the loss suffered upon termination but at the same time limit the recovery to a reasonable amount that would not prevent other creditors from recovering from the estate. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 353 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6309.

■ Although some courts take the position, and the trustee so argues, that the damages spoken of in section 502(b)(6) encompass virtually any cost or expense arising in consequence of a breach, others take a more measured view opining that the section is intended to limit only those damages which a lessor would have avoided but for the lease termination. *In re Atlantic Container Corp.*, 133 B.R. 980, 987 (Bankr. N.D.Ill.1991); *Contra In re Storage Technology Corp.*, 77 B.R. 824 (Bankr.Colo. 1986). This court believes that the correct application is as expressed by *Atlantic Container Corp., supra.* The statute applies only to the time period following termination (as opposed to claims arising out of pre-termination arrearages) and only includes damages anticipated to result from a tenant's failure to fill out the lease term.

It does not address damages wholly collateral to the termination event—such things as waste, destruction or removal of leasehold property. A claim can not exceed the greater of one year, or 15%, not exceeding three years of the time remaining in the lease calculated from the earlier of the date of the filing and the date surrendered. *See generally, In re Allegheny Intern., Inc.,* 136 B.R. 396 (Bankr.W.D.Pa.1991); *In re McLean Enters., Inc.,* 105 B.R. 928 (Bankr. E.D.Mo.1989).

■ As with any claim for damages arising out of the breach of a lease, a claim for damages under section 502(b)(6) is subject to mitigation including an obligation on the part of the landlord to attempt the re-letting of the premises. Any rents received in consequence of re-letting are not, however, applied toward satisfaction of the section 502(b)(6) claim after making the statutory calculations, rather such payments are deducted from the landlord's total actual lease termination damages, before the section 502(b)(6) cap is applied. *In re Goldblatt Bros., Inc.,* 66 B.R. 337 (Bankr.N.D.Ill.1986).

■ In arriving at what Albers' allowable claim for damages in consequence of breach should be we first of all start with the termination date of December 1, 1989, which preceded the date of bankruptcy and then calculate what the value of the term would have been had it not been breached. As of December 1, 1989, the lease had 29 months left to run @ $5,500.00 per month ($159,500.00) plus ongoing tax obligations estimated at $400.00 per month (the court recognizes the taxes for 1989 were actually $391.84 per month and those for 1990 were $416.00 per month, however the rates for 1991 and 1992 are unknown and thus, for purposes of making the calculation the court has used an averaged figure of $400.00 per month) for a total tax obligation over 29 months of $11,600.00 bringing the total due over the remaining lease term to $171,100.00. This figure is then reduced by the sums received by Albers in consequence of his successful mitigation effort leading to the re-letting of the premises to Hank Albers Leasing for $4,000.00

per month commencing with January 1990 which is 28 months at $4,000.00 for a mitigation reduction of $112,000.00 leaving total damages of $59,100.00. We now apply the section 502(b)(6) cap rate of 15% or one year, whatever is greater. Fifteen percent is $8,865.00 and the value of one year of the remaining term is approximately $70,800.00. (arrived at as follows: ($5,500.00 × 12) + (400 × 12) = $70,800.00). This sum is greater than 15% of the remaining term and is less than 3 years of rent, thus Albers is entitled to a claim of $70,800.00 for post-termination damages arising from the breach. He is also entitled to all accrued but unpaid taxes accruing pre-termination totaling $2,351.04.

### 2.

 As for damage to the premises, the court holds that these have nothing to do with the kind of damages restricted by application of section 502(b)(6). Under the terms of paragraph 21 of the lease, the Debtor was to quit and surrender the premises in as good condition as when received. Nothing therein gave the Debtor the right to remove property or destroy it. Other courts have held that damages caused by a tenants failure to properly repair and maintain the premises are not subject to section 502(b)(6) since that is a separate obligation imposed on a tenant which under applicable non-bankruptcy laws are regarded as separate items of damage unrelated to the breach itself. *See In re Atlantic Container Corp., supra.* In *Swain v. Harvest States Cooperatives*, 469 N.W.2d 571 (N.D. 1991), the North Dakota Supreme Court held that the cost of repair and reconstruction is the proper measure of damages for injury caused to property. The court accepts Albers' evidence on the costs to restore the premises as reasonably certain and accordingly allows him a claim of $12,036.70.

### 3.

 The consulting agreement is a separate agreement under none of the section 502(b)(6) constraints. Damages arising in consequence of its breach are, however, subject to mitigation. *See Vallejo v.*

*Jamestown College*, 244 N.W.2d 753 (N.D. 1976). Here the agreement had 29 months left to run at $2,527.04 per month. Albers, however, did not remain unemployed but rather reentered the business sometime in December or January and commenced receiving a salary of $3,000.00 per month. He has not lost any income as a result of the post-termination breach and accordingly his claim for damages arising therefrom is disallowed. It is, however, noted that the Debtor failed to pay him his consulting fee for the month of May 1989 and that sum is a viable claim. Accordingly, Albers is allowed the sum of $2,527.04 as a balance earned but unpaid during the pre-termination period.

In sum, and in view of the foregoing discussion, the claim of Henry A. Albers is allowed in the total aggregate amount of $87,714.78.

SO ORDERED.