In re ROSE'S STORES, INC., Debtor.

Bankruptcy No. 93–01365–5–ATS.

United States Bankruptcy Court,
E.D. North Carolina.

Feb. 24, 1995.

Shannon L. Nagle, Smith Debnam Hibbert & Pahl, Raleigh, NC, for debtor.

James Kelly Giffen, Knoxville, TN, for Union Central Life Ins. Co.

## ORDER REGARDING CLAIM OF UNION CENTRAL

A. THOMAS SMALL, Chief Judge.

The matter before the court is the Second Objection of the chapter 11 debtor, Rose's Stores, Inc., to Landlord Claims, specifically, the debtor's objection to claim numbers 2975 and 2976 submitted by Union Central Life Insurance Company (Union Central). A hearing was held in Raleigh, North Carolina on January 30, 1995.

Union Central's claim arises from the rejection of its lease to Rose's and is subject to the limitations of § 502(b) of the Bankruptcy Code. Section 502(b)(6) mandates that any claim for rejection damages for a real property lease be "capped" at a maximum amount to be calculated as follows:

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates;

11 U.S.C. § 502(B)(6).

Rose's objected to the lease rejection claim of its landlord, Union Central, among other things, on the grounds that Union Central's claim had improperly included non-rent items in calculation of the cap on lease rejection damages under 11 U.S.C. § 502(b)(6). The parties agree that Union Central's lease rejection damages exceed the statutory cap and that therefore the cap will determine the amount of Union Central's claim. The debtor contends that only rent, percentage rent and common area maintenance charges (CAM) are properly encompassed by the phrase "rent reserved" in 502(b)(6), based on a two part test enunciated in *In re Conston Corp., Inc.,* 130 B.R. 449 (Bankr.E.D.Pa. 1991). Union Central argues that property taxes, general maintenance, insurance and utilities should also be included in the "rent reserved" under § 502(b)(6).

The two part test in *Conston* specifies that charges are included in the "rent reserved" for calculating the cap under § 502(b)(6) only if the lease expressly denominates the items as "rent" *and* the charges are similar to "pure rent" in that they are "regular, fixed, periodic charges payable in the same way as 'pure' rent." *Id.* at 455.

Union Central, the successor to the lease in question, admits that its lease does not label the disputed amounts as "rent," but claims that this prong of the *Conston* test should not be applied and that mere labels are not controlling. Rather, Union Central appears to argue that the only test for "rent reserved" under § 502(b)(6) should be whether the parties intended the charge to be part of the rent, regardless of labels. Union Central points to the dicta in *United Cigar Stores Co. v. Irving Trust,* 86 F.2d 629, 633 (2d Cir.1936), *cert. denied* 300 U.S. 679, 57 S.Ct. 671, 81 L.Ed. 883 (1937), to the effect that pure rent in a lease is undoubtedly

"fixed with reference to the other burdens assumed by the tenant and it is reasonable to assume that the 'regular' rent would have been larger if the tenant had not agreed to assume the [other] very substantial obligations [in the lease]."

The only relevant decision by a court in the Fourth Circuit cited by either party is *In re Heck's, Inc.,* 123 B.R. 544 (Bankr. S.D.W.Va.1991). The court in *Heck's* decided that "rent reserved" encompassed charges that had "a relationship to the value of the property and the value of the lease thereon." *Id.* at 546 (citing *Kuehner v. Irving,* 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1937)).

█ It is apparent that any item included in "rent reserved" must be provided for in the lease in question. "A lessor's right to payment is governed by the provisions of the lease or other contract between the lessor and debtor." *In re Goldblatt Bros., Inc.,* 66 B.R. 337, 345 (Bankr.N.D.Ill.1986) (citations omitted). Parties to leases generally do not draft them with an eye toward § 502(b)(6) of the Bankruptcy Code, and while a lease must *provide* that the tenant is obligated to pay any charges included in "rent reserved" under § 502(b)(6), the court does not find the absence of an express rent label to be determinative.

For example, the Bankruptcy Court for the Northern District of Illinois distinguished its holding in *Goldblatt* in *In re Farley, Inc.,* 146 B.R. 739 (Bankr.N.D.Ill.1992). In *Farley,* the lease obligated the tenant to pay insurance, taxes, waste disposal charges incurred, and a fixed annual capital improvement fee, although none of these were expressly labelled as "rent." *Id.* at 741. The court in *Farley* stated that " '[r]ent reserved' under ... § 502(b)(6)(A) is any payment specifically denominated as rent," but went on to say that such rent reserved also "includes any payments that relate directly to or increase the value or worth of the property, and are fixed, regular payments." *Id.* at 746. Thus, despite the absence of a "rent" label in the lease, *Farley* held that amounts for taxes, insurance and the annual capital improvement fee were part of rent reserved. *Id.* at 747. *Farley* distinguished the included capi-

tal fee from the maintenance fees excluded in *Goldblatt* on the grounds that the capital fee was fixed and periodic and the *Farley* lease created a duty to pay it apart from the general duty to maintain the premises. *Id.* at 746–47.

■ The court rejects the two part test of *In re Conston Corp., Inc.* and instead adopts a different two part test for items included in rent reserved for the purposes of calculating the § 502(b)(6) cap. First, the charge must be provided for in the lease as the tenant's obligation, though it need not be denominated as rent. Second, the charge must be related to "the value of the property and the value of the lease thereon." *In re Heck's, Inc.,* 123 B.R. 544, 546 (Bankr.S.D.W.Va. 1991). The purpose of the statutory cap is to fairly compensate the landlord for its loss due to the breach without allowing such large damages as to deprive other creditors of a reasonable recovery. *In re Farley,* 146 B.R. 739, 744–45 (Bankr.N.D.Ill.1992) (citations and footnote omitted). The two part test adopted here will more equitably achieve this purpose than relying on the labels employed by a lease or than looking to the fixed and periodic method of payment used by other courts.

■ Applying this two part test to the lease between Union Central and Rose's (Clinton lease), the court finds that taxes and insurance are includable in the "rent reserved." These charges are clearly the tenant's obligation in the lease and are related to the value of the property and the lease. Clinton lease ¶¶ 5–6. Certain general maintenance and utilities are the tenant's responsibility under paragraphs 11 a 14(b), respectively of the Clinton lease. These kinds of charges are generally related to the tenant's use of the premises rather than to the value of the property or the leasehold estate and should not be included in the § 502(b)(6) calculation. The utility companies involved with the Clinton shopping center have a fixed minimum charge for commercial buildings such as the premises at issue. A mandatory minimum charge required to preserve the value of the property, if properly documented, would be includable in the rent reserved. The tenant's general maintenance responsi-

bility should not be included in the cap calculation.

Union Central has also argued that Tennessee lease law should control the definition of "rent" under § 502(b)(6). In this case, the court's decision is consistent with Tennessee's definition of rent and therefore the court need not address the issue of whether state or federal law controls this definition.

Consequently, the debtor's objection as to the inclusion of taxes and insurance is **DENIED.** The debtor's objection as to general maintenance is **ALLOWED,** and the debtor's objection regarding utility charges is **DENIED** only insofar as Union Central can show a fixed minimum charge necessary to preserve the value of the property. The parties are to agree on a calculation in accordance with this order and submit it to the court. An order will then be entered specifying Union Central's claim amount.

**SO ORDERED.**