In re BEST PRODUCTS CO., INC., Chapter 11 Debtor-in-Possession.

Bankruptcy No. 96–35267–T.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Nov. 18, 1998.

James J. Burns, Williams, Mullen, Christian & Dobbins, Richmond, Virginia, for Claimant American Real Estate Holdings, L.P.

Robert N. Michaelson, Winick & Rich, P.C., New York City, for Claimant American Real Estate Holding, L.P.

H. Slayton Dabney, Jr., Douglas M. Foley, McGuire, Woods, Battle & Boothe, LLP, Richmond, Virginia, for Debtor Best Products Co., Inc.

Kevin R. Huennekens, Patricia Hobbs Knapp, Maloney, Huennekens, Parks, Gecker & Parsons, P.C., Richmond, Virginia.

Paula S. Beran, LeClair, Ryan, Richmond, Virginia.

### MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

The debtor objects to the lease rejection claim of a landlord, raising the issue of whether a landlord's damages resulting from the debtor tenant's failure to perform building maintenance as required in the lease is subject to the rejection claim limitations of 11 U.S.C. § 502(b)(6)(A).

### Findings Of Fact

The debtor Best Products Co., Inc., a national retail chain, filed a chapter 11 petition in this district on September 24, 1996.

After filing its petition the debtor ceased operations and sold substantially all of its assets to Jubilee Limited Partnership III and Bernstein Financial Group, LLC (JBAN), under an agreement dated October 19, 1996, and approved by this court's order entered November 19, 1996.

Among the assets purchased by JBAN was an option to acquire or otherwise provide for the assignment of the debtor's numerous store leases. This included a lease dated December 30, 1974, between Best as tenant and American Real Estate Holdings L.P. (AREH) as landlord for a warehouse and distribution center located in Ashland, Virginia.

JBAN did not exercise its option to acquire or assign debtor's lease with AREH,

and debtor rejected the lease by order dated May 2, 1997.

On May 30, 1997, the landlord AREH filed its lease rejection proof of claim (no. 3493) in the total amount of $2,648.523.26, to which the debtor and JBAN filed objections on August 22, 1997.[1]

AREH's unsecured claim includes the following components:

(a) deferred maintenance damages in the amount of $1,604,444.00,

(b) prepetition real estate taxes of $22,887.18, and

(c) lease rejection damages in the amount of $1,008,778.54.

*Lease Between Best and AREH.*

The term of the lease was from December 30, 1974, to December 31, 2004, at an annual base rent of $508,222.00.

The lease was a so called triple net lease under which Best was solely responsible for the payment of all expenses and other obligations in connection with the property. In this connection, the lease contained the following provisions:

Art. X (9)

"The parties intend that this Lease shall provide for a net return to Lessor in the amount of the rent above set forth. The parties therefore agree that all expenses of whatever nature, whether ordinary or extraordinary, arising in connection with this Lease or by reason of the use or occupancy of the leased premises shall be paid and discharged by Lessee, provided, however that Lessee shall not be required to pay any overhead, operating or administrative expense of Lessor nor any income or franchise taxes or legal fees of Lessor except as otherwise specifically provided for in this Lease."

Art. VI (2)

"Lessee at its sole expense will keep and maintain the leased premises and all improvements from time to time located thereon and all appurtenances thereof and

the sidewalks, passageways, trackage rights (to the extent the same are subject to the Lessee's control) on, adjacent and appurtenant thereto, in good repair and in safe and sanitary condition, ordinary wear and tear excepted; and will at its sole expense make all necessary repairs, replacements and renewals, which shall be substantially equal in quality and class to the original work. The Lessee will conform with and do all things necessary to comply with every valid law, regulation, order and requirement of any governmental authority relating to the leased premises, and will hold and save the Lessor free and harmless of all losses, costs, expenses, claims or liabilities for the breach thereof, or failure to comply therewith. The Lessor shall not be required to repair or maintain the premises in any way."

Art. XX (1)

"At the termination of this Lease for any reason other than a purchase by Lessee pursuant to Article XIII, the Lessee and the tenants and subtenants under the Lessee, and any and all persons holding or claiming under the Lessee, shall surrender possession of the leased premises to the Lessor, maintained as herein provided for (except for ordinary wear and tear and, in the case of a termination pursuant to Article XIII, any damage by condemnation, fire or other casualty) and free of any and all claims thereto by the Lessee or any party holding under the Lessee."

At the time debtor filed its chapter 11 petition on September 24, 1996, it was responsible under Art. VI(2) of the AREH lease to perform maintenance on the premises which it had failed to do. The court has fixed AREH's deferred maintenance damages at $261,794.50 rather than the amount claimed of $1,604,440.00.

*Discussion And Conclusions*

■ Section 502(a) of the Bankruptcy Code provides for the allowance of claims in bankruptcy. Where a party has objected to a claim, § 502(b) requires the court to determine the amount of and to allow the claim

1. AREH subsequently filed an amended claim which the court did not allow into evidence at hearing on the objection.

except to the extent that—

. . .

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of

(i) the date of the filing of the petition, and

(ii) the date on which such lessor repossessed or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

11 U.S.C. § 502(b)(6).

When debtor filed its bankruptcy petition it had failed to maintain AREH's premises as it was required to do under the lease in a number of substantial ways. The court has held that AREH will incur total costs of $261,794.50 to perform deferred maintenance that was a contractual obligation of debtor on the date it filed bankruptcy. AREH by its claim seeks payment of the deferred maintenance charges *in addition to* the rejection limitation provided in § 502(b)(6)(A).

The parties agree that the mathematical calculation of the § 502(b)(6)(A) cap component, as it pertains to AREH's lease rejection claim, is $1,008,778.54 (based upon base rent under lease) and that prepetition real estate taxes of $22,887.18 are proper and allowable as unpaid prepetition rent. (See footnote 12.) The agreed amount of the claim is thus $1,031,665.72. However, the parties disagree

over whether the deferred maintenance damages may also be allowed over the cap.

*Historical Perspective.*

A brief history of claims for future rent in bankruptcy under the Bankruptcy Act will be helpful to an understanding of the present issue. Generally, *see*, 3A *Collier On Bankruptcy* (14th Ed.), para. 63.32.

Prior to 1934, a landlord's claim for future rents accruing under a lease of a bankrupt tenant was considered contingent and therefore not provable, i.e., allowable, in bankruptcy. The fact that a nonprovable claim was also not dischargeable gave small solace to landlords whose tenants were often defunct.[2] The rationale for this treatment of future rent claims was grounded in ancient principles of landlord-tenant law.[3] *Manhattan Properties v. Irving Trust Co.,* 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824 (1934); *Oldden v. Tonto Realty Corp.,* 143 F.2d 916 (2d Cir. 1944); 3A *Collier* (14th Ed.), para. 63.32[1], [2], [3].

The problems for landlords became acute as many businesses suffered or failed during the Great Depression beginning in 1929. As one court said, "landlords' claims depend[ed] on the niceties of ancient property law, rather than on the practical aspects of modern business. . . ." *Oldden v. Tonto Realty Corp.,* 143 F.2d at 919; *see also City Bank Farmers Trust Co. v. Irving Trust Co.,* 299 U.S. 433, 438, 57 S.Ct. 292, 294, 81 L.Ed. 324 (1937).

Various proposals were considered in Congress to remedy the landlords' situation. There were conflicting concerns to be reconciled. On one hand there was the need for landlords to be able to participate in the bankruptcy claim process and share in assets; on the other hand was the need not to

---

**2.** Under the Act, a debt that could not be proved under Bankruptcy Act § 63 could not be discharged under § 17.

**3.** "But the law as to leases is not a matter of logic in vacuo; it is a matter of history that has not forgotten Lord Coke." Justice Holmes in *Gardiner v. Butler,* 245 U.S. 603, 605, 38 S.Ct. 214, 62 L.Ed. 505 (1918). In sum the problem was that when a landlord reentered leased premises, under the common law there was no further obligation on the tenant to pay rent. Moreover,

a tenant had no obligation to pay rent until the time rental payments were due under the lease; thus a tenant's future obligation was held contingent because of the uncertainty of future events. *Manhattan Properties v. Irving Trust Co.,* 291 U.S. at 331, 54 S.Ct. at 386.

Prior to 1934, landlords had not generally been successful in structuring leases so as to avoid the adverse bankruptcy treatment. *Oldden v. Tonto Realty Corp.,* 143 F.2d 916, 919 (2d Cir.1944).

allow the debtor's "estate to be depleted through admission of extravagant claims for damages or unearned rent." 3A *Collier* (14th Ed.), para. 63.32[4], p. 1931. A third concern was the debtor's discharge.

An "era of more rational treatment of claims founded upon leases ..." was commenced when in 1933 and 1934 Congress amended the Bankruptcy Act to allow a limited claim for future rents in bankruptcy composition, liquidation and reorganization proceedings. 3A *Collier* (14th Ed.), para. 63.32[4], at 1929. With respect to ordinary bankruptcy liquidation cases, the 1934 amendment added a new clause [7] to § 63(a) which allowed a landlord's claim for future rents not to exceed "the rent reserved by the lease ... for" one year after surrender of the premises, plus rent accrued to that date. Bankruptcy Act, chap. 424, 48 Stat. 924, § 4 a. There were subsequent Congressional refinements to this provision, but it remained essentially intact until the enactment of present § 502(b)(6) in the Bankruptcy Code of 1978. *See* Bankruptcy Act § 63(a)(9).[4]

Thus it can be seen that the purpose of the bankruptcy statutory provisions first enacted in 1933 and 1934 was to resolve concerns over the treatment of *future* claims under leases, (i.e., claims arising as a result of the rejection).[5] Even under the Bankruptcy Act, claims under a lease that were due on the date of bankruptcy filing were provable under § 63(a)(1) and (4) as claims under a written instrument or contract. 3A *Collier* (14th Ed.), para. 63.17. Although there ap-

pears to be little case law on the issue, the court has found two Bankruptcy Act cases in which damages incurred under a lease prior to bankruptcy were said to be allowable following rejection. *See In re F & W Grand 5–10–25 Cent Stores, Inc.,* 74 F.2d 45, 47 (2d Cir.1934) (damages for breach of covenant to improve premises is in nature of future rent "except so far as damages accrued prior to bankruptcy"); *Mauer v. Corondolet Realty Trust (Matter of Parkview–Gem, Inc.),* 465 F.Supp. 629, 634 (W.D.Mo.1979) (expenses of roof repair allowed as obligation of tenant under lease).

*AREH's Claim For Deferred Maintenance Damages.*

█ In present day applications of § 502(b)(6), courts still recognize one of the original goals of allowing landlord's claims for lease rejection damages. This section is "designed to compensate the landlord for his loss while not permitting a claim so large ... as to prevent other general unsecured creditors from recovering a dividend from the estate." *Schwartz v. C.M.C. Inc. (In re Communicall Central, Inc.),* 106 B.R. 540, 544 (Bankr.N.D.Ill.1989).

Debtor's position here is that $1,031,665.72 is AREH's maximum allowable claim under the Lease and that the deferred maintenance damages of $261,794.50 must be disallowed. Debtor argues that the statutory cap of § 502(b)(6)(A) applies to all claims for damages that a lessor may have for any breach of a lease or a covenant of a lease, including

---

**4.** The original § 63(a)(7) became § 63(a)(9). In its final form the section read as follows:

§ 63. **Debts Which May Be Proved.** a. Debts of the bankrupt may be proved and allowed against his estate which are founded upon

...

(9) claims for anticipatory breach of contracts, executory in whole or in part, including unexpired leases of real or personal property: *Provided, however,* That the claim of a landlord for damages for injury resulting from the rejection of an unexpired lease of real estate or for damages or indemnity under a covenant contained in such lease shall in no event be allowed in an amount exceeding the rent reserved by the lease, without acceleration, for the year next succeeding the date of the surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs, whether before or after bankruptcy,

plus an amount equal to the unpaid rent accrued, without acceleration, up to such date: ...

As stated, § 63(a)(9) applied to ordinary bankruptcy. A separate provision in Chapter X, Corporate Reorganizations, provided similar treatment except that the limit of the landlord's claim in a reorganization case was rent reserved for three years. Bankruptcy Act § 202; 6 *Collier On Bankruptcy* (14th Ed.), para. 9–20[3]. Of course, the 1978 Code provided a three year limitation for all bankruptcy cases. *See* 11 U.S.C. § 502(b)(6)(A).

**5.** The new provisions were "designed to un-feudalize the law of leases and to do some justice to landlords without injuring the other creditors of lessees...." *Oldden v. Tonto Realty Corp.,* 143 F.2d at 922 (dissenting opinion).

claims for building repair and maintenance and any other damages arising upon the termination of the lease by rejection. Case authority for this position is found in *In re McSheridan*, 184 B.R. 91 (9th Cir. BAP 1995); *In re Mr. Gatti's Inc.*, 162 B.R. 1004 (Bankr.W.D.Tex.1994); *In re Communicall Central, Inc.*, 106 B.R. at 540; *In re Storage Technology*, 77 B.R. 824, 825 (Bankr.D.Colo. 1986).

One premise for the debtor's position that AREH's maintenance damages are capped is that the language of § 502(b)(6) refers broadly to "damages resulting from the termination of a lease...." In *In re Storage Technology*, 77 B.R. at 825, which did not involve the type of prepetition damages claimed here, the court stated: "This language does not qualify or in any way limit the type of damages involved. The damage cap applies to all damages, which are then arbitrarily capped and measured by rent reserved. Such a cap has been in the bankruptcy laws for many years."[6]

A more in depth analysis of the issue under § 502(b)(6) is presented in *In re Mr. Gatti's*, 162 B.R. at 1007–13, a case almost directly on point with this case. *Mr. Gatti's* is perhaps the most persuasive authority for the restrictive view that would cap prepetition damages for the debtor tenant's failure to maintain leased premises. The court found that the debtor tenant had at the time of the petition breached a maintenance and repair covenant of a lease that was similar to the one in AREH's lease. After examining both sides of the damages issue, including the legislative history and plain meaning of § 502(b)(6), the court concluded that these damages must be capped because "to ignore the cap would be a drastic change from well established bankruptcy law as it existed prior to enactment of § 502(b)(6)."[7] In *In re McSheridan*, the Ninth Circuit B.A.P. relied heavily on *Mr. Gatti's* to reach a rather broad, if not startling, conclusion:

> Reading these provisions [i.e., §§ 365(d)(3), 365(g), 502(b)(6), 502(g) ] as a whole, therefore, rejection of the lease results in the breach of each and every provision of the lease, including covenants, and § 502(b)(6) is intended to limit the lessor's damages resulting from that rejection. The damages are those resulting from nonperformance of the debtor's obligations under the lease. *Mr. Gatti's*, 162 B.R. at 1011. The distinction between past obligations under the lease and damages "caused" by the termination is incorrect because all damages due to nonperformance are encompassed by the statute.[8]

184 B.R. at 102.

The rulings of the bankruptcy courts in *Mr. Gatti's* and *McSheridan*, while not unreasonable, strike me as resting upon a

---

6. A similar observation was made in a Bankruptcy Act treatise. The text, while recognizing that § 63(a)(9) was directed at future rents and that it would be reasonable to assume there was no Congressional intent to change existing law goes on to state that "the language of clause (9) is unfortunately chosen in that it is broad enough to cover any kind of damage claim by a landlord, yet speaks in (sic) provable damage in terms of rent reserved." 2 *Remington On Bankruptcy* (1956), § 852.03, at 279.

However, as discussed below, the "plain meaning" of the statute may also be interpreted to allow damages over the cap. In fact, the court in *In re Mr. Gatti's*, another case cited by debtor, considers § 502(b)(6) under the "plain meaning" rule of statutory construction and appears to conclude that it should be interpreted as an *exception* to the plain meaning rule; rather the court's ruling is based on the legislative history of § 502(b)(6) and what the court finds to be "the intent of the drafters" of the statute. 162 B.R. at 1010–13.

7. See footnote 6.

8. Both *Mr. Gatti's* and *McSheridan* place emphasis on the interplay of the various code sections. Thus, § 365(g) provides that rejection constitutes a *breach* of the lease; § 502(g) allows a "claim arising from the *rejection*" as a prepetition claim, and § 502(b)(6) restricts the amount of a lessor's claim "resulting from the *termination* of a lease...." (emphasis supplied) There is some ambiguity here because the code sections do not consistently use the same terms. With respect to another claim objection in the *Best* case, a landlord argued that the breach of a lease caused by a rejection under § 365(g) was not necessarily a termination of the lease for purposes of § 502(b)(6). The court found the argument to be without merit because "if the vast majority of reported opinions are correct, rejection is equated to termination...." *Mr. Gatti's*, 162 B.R. at 1013; cf. *Eastover Bank For Savings v. Sowashee Venture (Matter of Austin Development Co.)*, 19 F.3d 1077, 1082–1083 (5th Cir.1994).

somewhat tortured analysis of the relevant code sections. Moreover, I do not agree that these rulings find support in the history of Bankruptcy Act § 63(a)(9) or Bankruptcy Code § 502(b)(6), as related above.[9] To the contrary, I have been unable to find anything in the legislative history of the Bankruptcy Act or current code that overtly suggests Congress intended to do more than change common law rules of law so as to allow landlords to receive a limited portion of future rents in bankruptcy.

Most of the cases found by this court do not follow the restrictive rationale of *Mr. Gatti's* and *McSheridan.* Rather, the weight of authority in reported opinions where landlords have actually claimed damages for such items as maintenance and repairs is that these damages do *not* result "from the termination of a lease of real property" and are therefore not subject to the cap of § 502(b)(6)(A).[10] *See In re Farley, Inc.,* 146 B.R. 739, 746 (Bankr.N.D.Ill.1992) (landlord's damages allowed for prepetition taxes and for property wrongfully removed by debtor tenant); *In re Bob's Sea Ray Boats,* 143 B.R. 229, 231–32 (Bankr.D.N.D.1992) (Damages are allowed for debtor tenant's failure to properly repair and maintain premises. Section 502(b)(6) limits "only those damages which the lessor would have avoided but for the lease termination."); *In re Q–Masters, Inc.,* 135 B.R. 157, 161 (Bankr.S.D.Fla.1991) (landlord's claim allowed for property damage caused by tenant); *In re Atlantic Container Corp.,* 133 B.R. 980, 991–92 (Bankr. N.D.Ill.1991) (allowed prepetition and postpetition damages based upon tenant's failure to repair and maintain premises; postpetition damages allowed as administrative expense); *Heck's Inc. v. Cowron & Co. (In re Heck's),* 123 B.R. 544, 546 (Bankr.S.D.W.Va.1991) ("The court rules that utility charges, janitorial expenses, and costs of keys, electrical repairs and a sign are elements of damages, but not elements of rent to be used in calculating the maximum allowable claim.").[11]

■ *In re Atlantic Container Corp.* contains a good analysis for the separate allow-

---

**9.** In considering the legislative history of § 502(b)(6), both *Mr. Gatti's* and *McSheridan* cite the case of *Oldden v. Tonto Realty Corp.,* 143 F.2d at 916, a 1944 opinion of the Second Circuit, which is favorably referred to in the 1978 Code legislative history. *Mr. Gatti's,* 162 B.R. at 1009 n. 4; *McSheridan,* 184 B.R. at 99 n. 7; H.R. No. 595, 95th Cong. 1st Sess. 353–354 (1977), Pub.L. No. 95–598, 1978 U.S.C.C.A.N. (92 Stat.) 6309–10. *Oldden v. Tonto Realty Corp.* reflects a somewhat strict application of the then relatively new Bankruptcy Act amendment of § 63(a)(9), but, as with the legislative history, I find nothing in this opinion that persuasively supports the rulings of *Mr. Gatti's* and *McSheridan.* Incidentally, § 502(b)(6) is not a codification of the ruling in *Oldden v. Tonto Realty Corp.,* as has been mistakenly stated.

**10.** In addition to the cases cited in the text, *see In re Clements,* 185 B.R. 895, 903 (Bankr. M.D.Fla.1995), in which the court allows the landlord prepetition rent due plus an additional sum for legal and maintenance expenses and insurance plus the statutory cap. The basis for this ruling is unclear because the court cites *In re Storage Technology Corp.,* 77 B.R. at 824, for the proposition that a landlord's actual damages, including those for "attorney's fees, or other financial covenants, are limited by the damage cap in § 502(b)(6)(A)." 185 B.R. at 903.

Also, some additional support in dicta for allowance of the maintenance damages is found in the Fourth Circuit Court of Appeals' recent affirmance of a ruling on a related issue. *See Cutler v. Lindsey (In re Lindsey),* 199 B.R. 580, 586 (E.D.Va.1996), *aff'd in part, vacated in part, on other grounds,* 1997 WL 705435 (4th Cir.1997) (unpublished opinion), *superseding,* 129 F.3d 117 (4th Cir.1997), in which the district court affirmed the bankruptcy court's allowance of a landlord's attorney fees over the cap. Courts have also divided on this issue. For a ruling which denies attorney fees both as rent reserved and as a separate claim, *see In re Main, Inc.,* 207 B.R. 832, 838 (Bankr.E.D.Pa.1997), *aff'd in part, rev'd on other grounds, In re Blatstein,* 1997 WL 560119 (E.D.Pa.1997).

**11.** *In re Heck's* also involved a related issue under § 502(b)(6)(A) concerning what charges under a lease constitute "rent reserved by such lease. . . ." 11 U.S.C. § 502(b)(6)(A). *See, In re Rose's Stores, Inc.,* 179 B.R. 789, 790–91 (Bankr. E.D.N.C.1995), where Chief Judge Small adopted a two part test to determine "rent reserved:" (1) the tenant must be obligated for the charge "though it need not be denominated as rent;" (2) the charge must be related to "the value of the property and the value of the lease thereon" (as opposed to charges "related to the tenant's use of the premises"). In this aspect, the court held that the tenant's "general maintenance responsibility" was not included in the cap calculation. 179 B.R. at 791. *See also Fifth Ave. Jewelers, Inc. v. Great East Mall, Inc. (In re Fifth Ave. Jewelers, Inc.),* 203 B.R. 372, 380–81 (Bankr. W.D.Pa.1996); *In re Farley, Inc.,* 146 B.R. at 746.

ance of prepetition damages for failure to maintain premises. For one thing the opinion recognizes that the primary concern of the drafters of the legislation "was with limiting *prospective* damage claims" of landlords. 133 B.R. at 987–88. Additionally, the court, without debating the "plain meaning" of the statute, acknowledges

> that the phrase "damages resulting from the termination of a lease" does not seem to contemplate the type of damages being sought here. The phrase suggests that § 502(b)(6) is intended to limit only those damages which the lessor would have avoided but for the lease termination. Any damages caused to the Premises by the Debtor's failure to fulfill its repair and maintenance obligations are unrelated to the termination of the lease.

133 B.R. at 987.

*Conclusion*

Because of the prevailing case law, the legislative history and what I find to be a reasonable interpretation of the "plain meaning" of § 502(b)(6), the court holds that AREH is entitled to include in its claim the sum of $261,794.50 for deferred maintenance damages due from the debtor prepetition. These damages are not precluded by the "rent reserved" cap of § 502(b)(6)(A).