OPINION OF THE COURT
Ellen M. Yacknin, J.
Introduction
Plaintiff Lake Parkway Associates, defendant Jennifer Noble’s former landlord, asks the court to enter summary judgment to recover rent and damages allegedly owed with respect to a leased apartment that defendant occupied. Specifically, plaintiff claims defendant owes it $1,380 for past due rent and late fees for May and June 2002, $310 for new keys and apartment cleaning, interest, and attorneys’ fees. Plaintiff has retained defendant’s security deposit of $625, plus interest of $2.82, totaling $627.82. Taking this amount into account, plaintiff seeks a total of $1,062.18, plus interest and attorneys’ fees.
Repudiating responsibility, defendant asserts that because she obtained bankruptcy relief under chapter 7 of the United States Bankruptcy Code, she has been relieved of liability for all debt associated with her lease. At oral argument, defendant also denied leaving her apartment in an excessively unclean condition.[1] According to the parties’ documents, the facts are as follows.
Facts
On August 20, 2001, defendant entered into a lease with plaintiff to rent an apartment commencing on September 22, 2001 and ending on August 31, 2002. Under the lease, defendant’s monthly rent was $625, with a late fee of $50 for rent received after the fifth of the month, plus an additional $30 fee for rent received after the fifteenth of the month.
On March 14, 2002, defendant filed a federal petition in bankruptcy under chapter 7 of the United States Bankruptcy Code (11 USC), which was amended on May 8, 2002 to include plaintiff as a *917 creditor.[2] The Bankruptcy Court for the Western District of New York entered an order of discharge on June 25, 2002.
Shortly before the order of discharge was entered, in either May or June 2002,[3] defendant vacated her apartment. Plaintiff seeks past due rent and late fees for May and June 2002. In addition, plaintiff seeks to recover the cost of replacing the locks, and of cleaning the apartment to make the unit suitable for occupancy by a new tenant. According to plaintiff:
“Plaintiff had to expend $310.00 more than is typical after a client vacat[es] an apartment due to the filthy and uninhabitable state the unit was left in after Defendant vacated. The damages incurred were far in excess of what would be considered normal wear and tear and the amounts expended by the Plaintiff were in addition to what is normally expended in cleaning and repairs on an apartment after it is vacated by tenants.” (Plaintiffs motion, exhibit B, ¶ 5.)
Defendant, who appeared at oral argument pro se, disputed plaintiff’s assertion and denied leaving her apartment in an excessively dirty condition.
Legal Analysis
I. Defendant’s Liability for Unpaid Rent
Defendant asserts that the unpaid rent she owed to plaintiff under her lease was entirely discharged in bankruptcy. For the following reasons, defendant is correct.
The starting place for the court’s analysis of the issues raised in this action is the definition of “debt” that is dischargeable in a federal bankruptcy action. The federal Bankruptcy Code defines “debt” as a “liability on a claim.” (11 USC § 101 [12].) The code, in turn, defines a “claim” as, inter alia, a “right to payment, whether or not such payment is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.” (11 USC § 101 [5] [A].) Interpreting this language and the code’s *918 legislative history, federal courts have held that the Congress intended to give “the ‘broadest definition’ ” to the term “ ‘claim,’ ” and that under this broad definition, “ ‘all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.’ ” (See In re Hassanally, 208 BR 46, 50 [9th Cir Bankr App Panel 1997]; see also S Rep No. 95-989, 95th Cong, 2d Sess, at 1, 21-22 [1978], reprinted in 1978 US Code Cong & Admin News, at 5787, 5807-5808; HR Rep No. 95-595, 95th Cong, 2d Sess, at 1, 309 [1977], reprinted in 1978 US Code Cong & Admin News, at 5963, 6266.) Based on this expansive definition, there can be no dispute that the May and June 2002 rent defendant owed under the lease is a debt that is subject to discharge in a bankruptcy action.
Federal bankruptcy law provides that only debts that arose prior to the date of a bankruptcy court’s “order for relief’ are discharged in a bankruptcy action. (See 11 USC § 727 [b].) Defendant points out that the bankruptcy court’s order of discharge was filed on June 25, 2002, after she had vacated the premises. (See plaintiffs motion, exhibit E.) Consequently, defendant contends, her debts that arose prior to June 25, 2002, including her May and June 2002 rent, were discharged.
Plaintiff correctly responds that under federal bankruptcy law, an order of discharge does not constitute a bankruptcy court’s “order for relief.” Rather, pursuant to 11 USC § 301, the petition in bankruptcy constitutes the “order of relief.” (See 11 USC § 301.) Thus, under federal bankruptcy law, only debts that arose prior to the date of the petition in bankruptcy are discharged under 11 USC § 727 (b).
Accordingly, if defendant’s May and June 2002 rent is deemed to be postpetition debt, it was not discharged by the bankruptcy court’s order of discharge, and plaintiff would be entitled to summary judgment. If, on the other hand, defendant’s May and June 2002 rent is deemed to be prepetition debt, it was discharged by the bankruptcy court’s order of discharge, and defendant, rather than plaintiff, would be entitled to summary judgment. (See CPLR 3212 [e].)
Defendant’s petition of bankruptcy was filed on March 14, 2002. Plaintiff argues that because defendant’s rent for May and June 2002 would have been due after March 14, 2002, her May and June 2002 rent constitutes “postpetition” debt that *919 was not discharged.[4] Despite the superficial appeal of plaintiff s syllogism, it is legally erroneous.
The key question of whether the rent payments defendant owed for May and June 2002 are prepetition debt or postpetition debt cannot be answered merely by looking to when those rent payments would have been due under the lease. Rather, the answer to this question relies, as well, on the effect of the automatic lease rejection provision of 11 USC § 365.
Under 11 USC § 365 (a), a trustee in a bankruptcy case may assume or reject a debtor’s unexpired lease. If a bankruptcy trustee does not assume or reject the debtor’s unexpired lease within a timely manner, the debtor’s unexpired lease is automatically rejected. (See 11 USC § 365 [d] [1].) Specifically, the Bankruptcy Code provides:
“In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.” (11 USC § 365 [d] [1].)
There is no evidence in the record — and no assertion to the contrary by either party — that the trustee in defendant’s bankruptcy action either assumed or rejected defendant’s unexpired lease within 60 days after the order of relief in the bankruptcy action.[5] Accordingly, by operation of 11 USC § 365 (d) (1), the unexpired lease was deemed to be rejected.
The automatic rejection of defendant’s unexpired rental lease directly affects whether the May and June 2002 rent is considered dischargeable prepetition debt or nondischargeable postpetition debt. Under 11 USC § 365 (g) (1), the rejection of the unexpired lease constitutes a breach of the lease by defendant that occurred “immediately before the date of the filing of *920 the petition.” (See In re Miller, 282 F3d 874, 877 [6th Cir 2002]; In re Lavigne, 114 F3d 379, 387 [2d Cir 1997].) Upon defendant’s breach of the unexpired lease, defendant owed a debt of the lease’s remaining rent payments — including her monthly rent payments that had not yet “matured” — to plaintiff. (See 11 USC § 101 [5], [12], and discussion, supra.)
Because defendant’s breach of the unexpired lease is deemed to have occurred immediately before her bankruptcy petition was filed pursuant to 11 USC § 365 (g) (1), the debt arising from defendant’s breach was created before defendant’s bankruptcy petition was filed. Under these circumstances, the debt arising from defendant’s breach of the unexpired lease is prepetition debt that was discharged pursuant to 11 USC § 727 (b). (See In re Miller, 282 F3d at 877.)[6]
Plaintiff acknowledges that pursuant to 11 USC § 365 (d) (1), an unexpired lease is deemed rejected if the bankruptcy trustee neither assumes nor rejects it within 60 days after the order for relief. Plaintiff nonetheless maintains that defendant is liable to plaintiff for her May and June 2002 rent because the automatic rejection of defendant’s lease did not terminate the lease. (See affidavit of Mary M. Connors, Esq., ¶ 10.)
Plaintiffs argument is unavailing for at least three reasons. First, plaintiffs analysis fails to account for the mandate of 11 USC § 365 (g) (1). As discussed above, pursuant to that provision, defendant’s breach of the unexpired lease occurred prior to the filing of defendant’s bankruptcy petition. Upon defendant’s breach of the lease, defendant’s liability for the rent due under the lease constituted a debt within the meaning of 11 USC § 101 (12). Such a debt generated a claim within the meaning of 11 USC § 101 (5) that is “deemed to occur prepetition without regard to when the obligation otherwise became due.” (In re Beck, 272 BR 112, 124 [Bankr ED Pa 2002] [emphasis added].) As a result, defendant’s prepetition debt due upon her prepetition breach of the lease — namely, all the rent owed under the lease — was discharged under 11 USC § 727 (b).
*921 Second, while plaintiff correctly asserts that rejection of the lease under 11 USC § 365 (d) (1) does not mean that the lease was terminated, it also does not mean, plaintiffs assertion notwithstanding, that defendant is financially liable to plaintiff for the May and June 2002 rent. Rather, the nontermination of defendant’s lease simply means that plaintiff is not foreclosed from pursuing any legally available postbankruptcy remedies related to the lease other than financial remuneration for the discharged debt, such as eviction. (See Dulac v Dabrowski, 4 AD3d 308 [1st Dept 2004] [where a tenant’s debts have been discharged in bankruptcy, “(t)he landlord may pursue any remedy to which it is entitled under state law for breach of the tenant’s obligation to pay rent, except a remedy against the debtor personally to collect the money due” (citations omitted)]; In re Beck, 272 BR at 121-122 [upon bankruptcy trustee’s rejection of lease, the existing contract will define the terms of any postbankruptcy performance, “although clearly it will not obligate the debtor to perform absent reaffirmation (of the lease)”]; In re Bacon, 212 BR 66, 69 [Bankr ED Pa 1997] [upon discharge of the bankrupt’s debts, a landlord may “enforce (his or her) rights under the lease other than the right to collect the discharged debt”];[7] In re Touloumis, 170 BR 825, 830 [Bankr SD NY 1994] [despite a discharge in bankruptcy, “a landlord can still avail itself of its statutory remedy to recover possession of premises for nonpayment of rent”].)
Third, the fact that plaintiff is legally barred from suing defendant for May and June 2002 rent in this action does not mean that plaintiff has no legal recourse with respect to the rent owed by defendant. To the contrary, the Bankruptcy Code provides that where a breached lease is rejected by the trustee in bankruptcy of the tenant, both unpaid accrued rent and, within certain limits, prospective rent under the lease, are allowable claims against the bankrupt’s estate in the bankruptcy action. (See 11 USC § 502 [b] [6]; see also 2 Dolan, Rasch’s Landlord and Tenant — Summary Proceedings §§ 22:8-22:9, at 159 [4th ed] [upon rejection of a lease, both past due rent and impending rent under the lease “may be allowed against the estate of a bankrupt”]; Michael T. Andrew, Executory Contracts *922 Revisited: A Reply to Professor Westbrook, 62 U Colo L Rev 1, 1 n 3, 15 [1991].) Thus, upon the bankruptcy trustee’s rejection of defendant’s breached lease, plaintiff was legally entitled to “money damages assertable as a general unsecured claim in the bankruptcy case.” (In re Bacon, 212 BR at 69; see In re Beck, 272 BR at 121.)
Simply stated, under the facts of this case, plaintiff was legally entitled to submit a claim in Bankruptcy Court for both unpaid past due rent and prospective rent under the lease, and to seek defendant’s eviction from her apartment upon the vacatur of the automatic stay. Plaintiff was not, however, entitled to sue defendant in a separate action for unpaid rent for May and June 2002.[8] (See generally In re Best Prods. Co., Inc., 229 BR 673, 676 [Bankr ED Va 1998] [“the purpose of the bankruptcy statutory provisions . . . was to resolve concerns over the treatment of future claims under leases, (i.e., claims arising as a result of the rejection)”]; see also 2 Norton, Bankruptcy Law and Practice 2d § 39:49 [2003]; John E. Lucian, Damn Those Damages: An Analysis and Overview of 11 USC Sec. 502(B)(6), 8 J Bankr L & Prac 365, 365-368 [1999].)
II. Defendant’s Liability for Nonrent Damages
Like her alleged financial liability for unpaid rent, plaintiffs claim for physical damage to the premises beyond normal wear and tear was discharged by defendant’s bankruptcy. (See In re Best Prods. Co., Inc., 229 BR at 676-677, 678; In re Bob’s Sea Ray Boats, Inc., 143 BR 229, 231 [Bankr D ND 1992]; In re Atlantic Container Corp., 133 BR 980, 987 [Bankr ND 111 1991].) Consequently, plaintiff’s property damage claims must be *923 submitted in the context of defendant’s bankruptcy action, even if the alleged damages arose after the order of relief was granted. (See In re Best Prods. Co., Inc., 229 BR at 678; In re Bob’s Sea Ray Boats, Inc., 143 BR at 231; In re Atlantic Container Corp., 133 BR at 987.) Such claims are allowed in addition to a landlord’s claim for accrued and future rent under 11 USC § 502 (b) (6). (See In re Bob’s Sea Ray Boats, Inc., 143 BR at 230-231; see also John E. Lucian, Damn Those Damages: An Analysis and Overview of 11 USC Sec. 502 (B)(6), 8 J Bankr L & Prac at 380-382.)
Because plaintiff’s claims against defendant for damages to the premises can be pursued only in defendant’s bankruptcy action, it is the Bankruptcy Court’s duty to assess the validity of plaintiffs claims upon a proper application. The court nevertheless observes that the documents submitted by plaintiff do not support its claim to $310 for damages to the apartment. As previously noted, plaintiff maintains that defendant is responsible for both the cost of changing the locks, which plaintiff asserts is $35, and the cost of cleaning the apartment. Because defendant does not deny her failure to return keys, plaintiff has a legitimate claim for $35. (See plaintiffs motion, exhibit F.)
The same cannot be said about the alleged apartment damages plaintiff seeks. Even assuming defendant left the apartment in an excessively filthy condition, which she denied at oral argument, plaintiff’s documents contradict each other and undermine its position with respect to the actual amount of damages. Plaintiff asserts that it “had to expend $310.00 more than is typical after a client vacat[es] an apartment due to the filthy and uninhabitable state the unit was left after Defendant vacated.” (Plaintiffs motion, exhibit B, ¶ 5 [emphasis added].) However, according to plaintiff’s undated document entitled, “Apartment Inspection Form,” the total amount assessed for cleaning defendant’s apartment was $275. (See plaintiffs motion, exhibit F.)[9] As matter of simple arithmetic, it is impossible to conclude that the sum of $275 equals “$310.00 more” than the unspecified “typical” cost of cleaning a tenant’s apartment after a tenant moves.
III. Status of Defendant’s Security Deposit
Plaintiff has retained defendant’s security deposit and accrued interest totaling $627.82. (See plaintiffs motion, exhibit *924 B, ¶ 6.) The legislative history of 11 USC § 502 (b) (6) makes it clear that a landlord cannot offset his or her actual damages against a security deposit and then assert a claim for the balance. Rather, a security deposit held by a landlord must be applied against the landlord’s claim in the Bankruptcy Court as capped under 11 USC § 502 (b) (6). (See S Rep No. 95-989, 95th Cong, 2d Sess, at 1, 63 [1978], reprinted in 1978 US Code Cong & Admin News, at 5787, 5849-5850; HR Rep No. 95-595, 95th Cong, 1st Sess, at 1, 353-354 [1977], reprinted in 1978 US Code Cong & Admin News, at 5963, 6309-6310; see also In re Mayan Networks Corp., 306 BR 295, 298-299 [9th Cir Bankr App Panel 2004]; In re PPI Enters. [U.S.], Inc., 324 F3d 197, 208 [3d Cir 2003].) Moreover, any amount of the retained security deposit that exceeds the landlord’s allowable claim must be turned over to the estate. (See In re Condor Sys., Inc., 296 BR 5, 14 n 11 [9th Cir Bankr App Panel 2003]; In re PYXSYS Corp., 288 BR 309, 319 [Bankr D Mass 2003]; In re Handy Andy Home Improvement Ctrs., Inc., 222 BR 571, 574-575 n 6 [Bankr ND 111 1998].)
Accordingly, insofar as plaintiff contemplates offsetting its claims against defendant with defendant’s security deposit, it must do so within the context of an appropriate claim for damages in bankruptcy court pursuant to 11 USC § 502 (b) (6). (See John E. Lucian, Damn Those Damages: An Analysis and Overview of 11 USC Sec. 502(B)(6), 8 J Bankr L & Prac at 388-389 [“the debtor should not be penalized for having placed a security deposit on the lease nor should the landlord be able to keep the deposit without having to account for it in the damages claim”].)
Conclusion
For the reasons discussed in this decision, plaintiffs motion for summary judgment is denied. Pursuant to CPLR 3212 (e), summary judgment is granted to defendant with respect to plaintiffs claims for damages arising out of defendant’s lease obligations.[10]

. Defendant did not file any responsive pleadings prior to the motion’s return date. On that date, however, she submitted several documents when she appeared in court pro se. In response to the court’s subsequent order, both parties submitted additional written information.

. Defendant’s April 22, 2003 letter to the court states that her bankruptcy petition was amended to add plaintiff as a creditor on May 25, 2002. However, both defendant’s October 1, 2002 affidavit and the Western District of New York “Amendment Cover Sheet” indicate that plaintiff was added as a creditor on May 8, 2002. (See plaintiffs motion, exhibit E.)

. Although plaintiff alleges that defendant vacated her apartment on June 19, 2002, defendant alleges that she vacated her apartment on May 31, 2002. (Compare affidavit of Thomas Colbert, plaintiffs motion, exhibit B, ¶ 4, with defendant’s October 1, 2002 affidavit, plaintiffs motion, exhibit E.)

. Plaintiff concedes that rent by defendant owed prior to the filing of the petition in bankruptcy was discharged, but contends that rent owed after the filing of the petition in bankruptcy was not discharged. (See affidavit of Mary M. Connors, Esq., ¶ 10; see also n 6.)

. As discussed above, under 11 USC § 301, the petition in bankruptcy constitutes the order of relief. While defendant’s petition in bankruptcy was filed on March 14, 2002, the petition was not amended to include plaintiff as a creditor until May 8, 2002. The record is devoid of any evidence that the bankruptcy trustee assumed or rejected the unexpired lease within 60 days of either March 15, 2002 or May 8, 2002.

. Plaintiff concedes that, as a result of defendant’s bankruptcy, “any amount due and owing for pre-petition rent would be discharged.” (Affidavit of Mary M. Connors, Esq., ¶ 10.) Plaintiff nevertheless insists that defendant is “still responsible for post-petition rent.” (Affidavit of Mary M. Connors, Esq., ¶ 10 [citations omitted].) For the reasons discussed in this decision and order, the debt arising from defendant’s unexpired lease is deemed to be prepetition debt. Accordingly, that debt was discharged regardless of the fact that it may have been debt related to months that occurred after defendant filed her petition for bankruptcy.

. Citing In re Rush (9 BR 197 [Bankr ED Pa 1981]), the Bacon court also observed that “since the failure to pay rent was a breach of the lease, we conclude that the landlord may pursue any remedy to which it is entitled under state law for that breach except a remedy against the debtor personally to collect the money due.” (212 BR at 69.)

. Notably, no case cited by plaintiff supports its position that it is entitled to sue defendant for unpaid rent for May and June 2002. (See affidavit of Mary M. Connors, Esq., ¶ 10.) To the contrary, each case is consistent with the court’s conclusion in this action. In both In re Bacon (212 BR 66 [Bankr ED Pa 1997]) and In re Collins (199 BR 561 [Bankr WD Pa 1996]), the Bankruptcy Courts held that the Bankruptcy Code’s antidiscrimination provision does not bar a public housing authority from seeking to evict the debtor-tenant as a result of tenant’s breach of the lease. (But see In re Stoltz, 315 F3d 80, 95 [2d Cir 2002] [the Bankruptcy Code’s antidiscrimination provision bars a public housing authority from evicting a tenant based on the nonpayment of discharged rent].) Similarly, in In re Touloumis (170 BR 825 [Bankr SD NY 1994]), the Bankruptcy Court vacated the Bankruptcy Code’s automatic stay to enable the private landlord to continue its state court eviction proceedings against the tenant-debtor. Plaintiffs assertion notwithstanding, none of these cases holds, expressly or implicitly, that a landlord may sue a tenant whose unpaid rent under a lease has been discharged in a chapter 7 bankruptcy proceeding to recover that rent.

. The undated “Apartment Inspection Form,” which plaintiff submitted as evidence of the cost it incurred to clean defendant’s apartment, appears to be an inspection form rather than a bill reflecting actual charges. (See plaintiffs motion, exhibit F.)

. The court’s decision does not preclude defendant from pursuing any claims she may have against plaintiff for compensatory damages, punitive damages, and attorneys’ fees for suing her in this action in violation of the permanent discharge injunction under 11 USC § 524 (a) (2). (See 11 USC §§ 105, 362 [h]; see also In re Crysen/Montenay Energy Co., 902 F2d 1098, 1104-1105 [2d Cir 1990]; In re Watkins, 240 BR 668, 675-676, 678-679, 680-681 [Bankr ED NY 1999].)